UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DELBERT SHAKLEFORD,  )<br>  )<br>  Plaintiff,  )<br>  )<br>V.  )<br>  )<br>JAMES EARL HENSLEY,  )<br>  )<br>  Defendants.  )<br>  )<br>  ) | Civil No. 12-194-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Delbert Shakleford claims that when State Trooper James Earl Hensley searched his home without probable cause or a valid search warrant, he violated his rights under the Fourth Amendment to the United States Constitution. Shakleford seeks vindication of these rights by asserting the instant action pursuant to 42 U.S.C. § 1983 for illegal search and seizure and malicious prosecution. [R. 1]. Trooper Hensley has countered with the motion to dismiss presently pending before the Court, wherein he argues that the statute of limitations has run on Shakleford's illegal search and seizure claims and that his malicious prosecution claim fails on the merits. [R. 4]. Trooper Hensley's motion, having being fully briefed by the parties and considered by the Court, shall be GRANTED and Shakleford's claims DISMISSED.

I

The relevant facts at issue in this motion are largely undisputed. On August 6, 2007, the Kentucky State Police Dispatch received a report of a stolen television and VCR that was

believed to be at the home of Delbert Shakleford, who bought these items from the individual who stole them. Trooper Hensley approached Shakleford who acknowledged that he had the television and VCR, and he took Trooper Hensley to the rental home where the objects were located. According to Shakleford, he voluntarily turned over the stolen merchandise, but refused to allow Trooper Hensley to search the rental home. In response, Trooper Hensley obtained search warrants for the rental home and Shakleford's residence, and his subsequent search uncovered a Brolin shotgun that had previously been reported stolen. The same day Shakleford was arrested and charged with several offenses, though none of which were in relation to the Brolin shotgun. All of these charges were later dismissed.

On December 7, 2009, Trooper Hensley testified about the Brolin shotgun before the Harlan County Grand Jury, which issued an indictment against Shakleford for receiving a stolen firearm. A week later, Shakleford was arrested and several bond conditions were set concerning his pretrial release. However, before the case could proceed to trial, the Harlan Circuit Court suppressed the search that uncovered the shotgun. According to the court, the search warrant simply described the property to be seized as "Property being involved in Kentucky State Police Case Number 10-07-0781." Citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004), the court found that because the warrant did not sufficiently describe the items to be seized, it was invalid. As a result of this suppression, on October 3, 2011, the Harlan Circuit Court dismissed the case against Shakleford. Though the claims against him were dismissed, Shakleford says that he incurred $10,000 in attorney fees over the course of the prosecution.

Shakleford initiated this action on September 11, 2012. In his complaint, Shakleford raises three claims under the Fourth Amendment and Section 1983 related to Trooper Hensley's illegal search of his home on August 6, 2007. Shakleford also claims that Trooper Hensley

2

engaged in malicious prosecution based on illegally obtained evidence in violation of the Fourth Amendment and Section 1983. Trooper Hensley responds that because these claims are time barred and lack merit the Court should grant his motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(6).

II

A

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

B

Trooper Hensley first argues that Shakleford's illegal search and seizure claims filed pursuant to Section 1983 on September 11, 2012, based on a search that occurred on August 6, 2007, are facially time barred. Section 1983 does not contain its own statute of limitations period, but it is well settled that constitutional claims asserted under Section 1983 are governed by the state personal injury statute of limitations. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir.

3

2007) (citing *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)); *Collard v. Ky. Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir.1990)).  Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued." KRS 413.140(1).

The parties agree that Shakleford's claims are governed by a one year statute of limitations, but their dispute centers on when those claims accrued.  Though the applicable statute of limitations is determined by state law, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dept. of Children's Servs.,* 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga,* 103 F.3d 516, 519 (6th Cir.1997)); *see also Hornback v. Lexington-Fayette Urban Cnty. Gov't*, 905 F. Supp. 2d 747, 749 (E.D. Ky. 2012).  According to the United States Supreme Court in *Wallace v. Kato*, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action…that is, when the plaintiff can file suit and obtain relief," 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007) (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (internal quotation marks and citations omitted).

Shakleford argues that the statute of limitations does not bar his claims because they did not accrue until the Harlan Circuit Court suppressed the evidence of the illegal search and dismissed the claim.  In Shakleford's view, this is because prior to that time he would have had no knowledge that the warrant was invalid and the search was illegal.  In support of this proposition, Shakleford cites *Ruff v. Runyon*, 558 F.3d 498 (6th Cir. 2001).  In *Ruff*, the plaintiffs brought a *Bivins* claim based on a criminal indictment that had been issued against them on the basis of false information.  Addressing the statute of limitations dispute between the parties, the

Sixth Circuit stated that "[u]nder federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff*, 258 F.3d at 500-01 (citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991); *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984)).  In applying that standard, the court found that "plaintiffs' claims did not accrue until the charges against plaintiffs were finally dismissed because prior to that point in time, plaintiffs did not 'know' of their injury for purposes of the statute of limitations." *Id*. at 502.

However, this holding was based on an application of the Sixth Circuit's previous decision in *Shamaeizadeh v. Cunigan,* 182 F.3d 391 (6th Cir. 1999).  The Sixth Circuit panel in *Ruff* expressly stated that, "[t]he rationale for our holding [in *Shamaeizadeh*] was premised upon the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)." *Ruff*, 258 F.3d at 501.  In *Heck*, a state prisoner attempted to challenge the constitutionality of his conviction by filing a Section 1983 suit in federal court instead of filing a petition for a writ of habeas corpus.  The Supreme Court noted that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and when a Section 1983 claims call into question the validity of the plaintiff's conviction or sentence, the claim is not cognizable under Section 1983 "unless or until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489.  In light of this determination, the Supreme Court crafted a deferred accrual rule, that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id* at 489-490. "In *Shamaeizadeh,* the Sixth Circuit extended the reasoning of *Heck* to a pre-conviction situation," tolling the statute of limitations during the pendency of criminal proceedings. *Eidson*,

5

510 F.3d at 638.

However, as the Sixth Circuit has more recently recognized, "the Supreme Court's decision in *Wallace* effectively abrogates the holding in *Shamaeizadeh*." *Fox*, 489 F.3d at 233. In *Wallace,* the Supreme Court stated "the *Heck* rule for deferred accrual is called into play only when there exists a 'conviction or sentence that has not been ... invalidated,' that is to say, an 'outstanding criminal judgment.'" 594 U.S. at 393.  Thus, counter to the Sixth Circuit's prior holding in *Shamaeizadeh*, the Supreme Court refused to extend the *Heck* bar to the pre-conviction context.  *See Fox* 489 F.3d at 234.  As a result, the plaintiff in *Wallace*, who had not been convicted, did not benefit from the *Heck* rule and his Section 1983 claim for false arrest accrued on the date that the plaintiff was arraigned before a magistrate on the charges filed against him, which is when he had "a complete and present cause of action."  *Wallace*, 549 U.S. at 388.

The Sixth Circuit has had occasion to consider these principles in the context of Section 1983 claim for illegal search and seizure and has found that generally the statute of limitations begins to run at the time of the illegal search.  Speaking for a Sixth Circuit panel in *Harper v. Jackson*, Judge Cook stated:

> *Wallace* also clarified that *Heck* does not delay the accrual of an otherwise complete and present cause of action when a judgment in the plaintiff's favor "would impugn *an anticipated future conviction.*" 127 S.Ct. at 1098. Harper's claims thus accrued on July 31, 2003, the date of the alleged illegal search and seizure. *Id.*

*Harper v. Jackson*, 293 Fed. App'x 389, 392 n.1 (6th Cir. 2008); see also *Michel v. City of Akron*, 278 Fed. App'x 477, 480 (6th Cir. 2008) (stating, "the statute of limitations on Michel's Fourth Amendment claims began to run from the search on November 23, 2004.").

Several district courts in this circuit have likewise found that claims under Section 1983

6

for illegal search and seizure accrue at the time of the improper search. *See Hornback*, 905 F. Supp. 2d at 749 (E.D. Ky. 2012) ("the Court concludes that Plaintiff had complete knowledge of the unlawful search and seizure of his bedroom on the day of the search, August 31, 2010. Therefore, his cause of action accrued on this date, and the applicable statute of limitations bars any action brought by Plaintiff after one year had passed."); *Lovins v. Hurt,* No. 11–216–JBC, 2011 WL 5592771 at *1 (E.D.Ky. Nov. 16, 2011) ("[t]he plaintiffs had reason to know of the injuries they are asserting, the unlawful search and seizure and property deprivation, at the time of the April 22, 2010 search.... For that reason, the federal constitutional claims related to the April 22, 2010, search will be dismissed as barred by the applicable statute of limitations."); *Pethtel v. Washington Cnty. Sheriff's Office*, 2:06-CV-799, 2007 WL 2359765 at *9 (S.D. Ohio Aug. 16, 2007) ("Plaintiff's other Fourth Amendment claim, based on the warrantless search of his truck without his consent, is also time-barred. Plaintiff had a complete and present cause of action on September 8, 2003, the date of the search."); *Waller v. Eby*, 3:06-0844, 2007 WL 2822108 at *7 (M.D. Tenn. Sept. 25, 2007) ("the Court finds that Plaintiff's Fourth Amendment illegal search claim accrued at the time of the search on June 21, 2002, and was thus untimely at the time the instant action was filed.").

Of particular interest, at least one district court has considered a factual predicate directly parallel to Shakleford's circumstances. In *Stanley v. Malone*, the plaintiffs brought suit against certain police officers for an illegal search and seizure. 2:07-CV-694, 2009 WL 485491 (S.D. Ohio Feb. 26, 2009). Like Shakleford, the plaintiffs argued that because the officers searched and seized their property pursuant to a facially valid search warrant, they were not aware until the trial court granted their motion to suppress and dismissed the criminal action that the search was illegal. The court rejected that argument on the basis of the following helpful analysis:

7

> As the Third Circuit has explained, "the discovery rule hinges upon actual, as opposed to legal, injury." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 n. 9 (3d Cir.1994). A cause of action accrues as soon as the plaintiff knows or should have known of the actual injury, regardless of when the plaintiff learns that the conduct at issue may constitute "an actionable legal wrong." *Id. See also Campau v. Orchard Hills Psychiatric Ctr.,* 946 F.Supp. 507, 511 (E.D.Mich.1996) ("[I]t is the plaintiff's awareness of *actual* injury, as opposed to *legal* injury, that suffices to trigger the running of the statutory period .") (emphasis in original); *Shannon v. Recording Indus. Ass'n of Am.,* 661 F.Supp. 205, 210 (S.D.Ohio 1987) ("[T]o commence the running of the limitations period, it is only required that plaintiff know or have reason to know of the *injury* which is the basis of his action.") (emphasis in original).

*Stanley v. Malone*, 2:07-CV-694, 2009 WL 485491 at *5 (S.D. Ohio Feb. 26, 2009). For these reasons, the court found that even in the presence of a facially valid search warrant, "Plaintiffs' claims accrued on July 20, 2005, the date of the search and seizure, and not on the date the state court finally determined that the seizure was illegal." *Id*.

Based on the aforementioned authority from the Supreme Court and the Sixth Circuit, as well as the persuasive reasoning of the sister-district courts in this circuit, the Court finds that Shakleford's Section 1983 search and seizure claims are time barred. Trooper Hensley came to Shakleford's home on August 6, 2007 looking for a television and a VCR, which Shakleford voluntarily produced. Trooper Hensley then proceeded to search Shakleford's home on the authority of an invalid warrant. At this point, Shakleford had a "complete and present cause of action," which triggers the accrual of his Section 1983 illegal search and seizure claim. And this injury was not hidden from Shakleford. He was present to see the search take place, and it is this knowledge, rather than the legal knowledge of the sufficiency of the warrant, that is relevant to the accrual analysis. Therefore, Shakleford's Section 1983 claims for illegal search and seizure accrued on August 6, 2007, the date of the search and seizure, and as he did not raise them until he initiated this action six years later, the claims are time barred and properly dismissed.

8

C

Trooper Hensley also argues that Shakleford's final remaining claim for malicious prosecution lacks merit. A claim for malicious prosecution under the Fourth Amendment and Section 1983 "remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Wallace,* 549 U.S. at 390) (emphasis in original). This tort "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Id*. (quoting *Barnes v. Wright,* 449 F.3d 709, 715–16 (6th Cir.2006)). The Sixth Circuit has identified four elements that the plaintiff must prove in order to succeed on a malicious prosecution claim under Section 1983 when that claim is premised on a violation of the Fourth Amendment:

> (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the legal proceedings resulted in the plaintiff's favor.

*Burden v. Paul*, 493 F. App'x 660, 665 (6th Cir. 2012) (citing *Sykes*, 625 F.3d at 308-09).

The parties primarily dispute whether or not probable cause existed for the prosecution initiated against Shakleford. Whether probable cause exists for an arrest or a search is "a distinct question from whether probable cause exists to prosecute an accused." *Mott v. Mayer*, 2013 WL 1663219 at *8 (6th Cir. Apr. 17, 2013) (citing *Sykes,* 625 F.3d at 310–11). "Probable cause to initiate a criminal prosecution exists where 'facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused [is] guilty of the crime charged.'" *Id* at 7. (quoting *MacDermid v. Discover Fin. Servs.,* 342 F. App'x 138, 146 (6th Cir.2009)). The Sixth Circuit has expressly stated, "[w]hat is certain is that a malicious prosecution claim fails when there was probable cause to prosecute ..." *Sykes*, 625 F.3d at 311 (citing *Fox,* 489 F.3d at 237)

9

(internal quotes and emphasis omitted).

According to Trooper Hensley, even if the facts as set out in the Shakleford's complaint are true, he cannot make out a claim for malicious prosecution because probable cause existed to support the institution of legal process. Specifically, Trooper Hensley states that he initially came to Shakleford's house to find stolen property, which Shakleford had in his possession. Shakleford then refused to let him search his home. When he later conducted the search pursuant to a warrant, he found the Brolin shotgun that had been previously reported as stolen. In Trooper Hensley's view, this provided him with sufficient probable cause to prosecute Shakleford for receiving a stolen firearm. Shakleford counters that the Brolin shotgun cannot be used as evidence to establish probable cause for the prosecution because it was uncovered through an illegal search and seizure.

Though Shakleford refuses to style his argument in these terms, he is essentially arguing that the Brolin shotgun may not be used to demonstrate probable cause for the prosecution because it is the fruit of the poisonous tree.[1] The fruit of the poisonous tree doctrine is an extension of the exclusionary rule of criminal procedure that "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (citing *United States v. Pearce,* 531 F.3d 374, 381 (6th Cir.2008)). And while this doctrine is well established in the criminal context, many courts, including several district courts in this circuit, have specifically refused to extend the fruit of the

---

[1] In his complaint, Shakleford expressly states that "because the search of Mr. Shakleford's home and the seizure of the Brolin shotgun were illegal there was not probable cause to justify an arrest or prosecution." [R. 1 at 22]. Additionally, after setting forth the elements of a malicious prosecution claim in his response, Shakleford addressed the probable cause element by stating, "[w]ithout the Brolin shotgun, there was a lack of probable cause to arrest to arrest and prosecute Mr. Shakleford." [R. 5 at 4]. Even though he does not use the words, this is tantamount to an argument that the fruit of the poisonous tree doctrine renders the Brolin shotgun suppressed and Trooper Hensley without probable cause.

poison tree doctrine to civil actions under Section 1983. *See Townes v. City of New York,* 176 F.3d 138 (2d Cir.1999) ("The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions."); *Martin v. Coyt*, 1:10-CV-00176-R, 2012 WL 1574823 (W.D. Ky. May 3, 2012) ("That the discovery of the prescription medication could have arisen out of a possible constitutional violation is also immaterial to the Court's analysis, since the Fourth Amendment's exclusionary rule does not apply to § 1983 proceedings."); *Medina v. Toledo*, 718 F. Supp. 2d 194, 207 (D.P.R. 2010) (Before granting the defendant's motion to dismiss the court stated, "in the context of a civil malicious prosecution claim, the exclusionary rule does not apply to the effect that it would nullify the officers' probable cause to arrest Moreno."); *Phelps v. City of Akron*, 5:04 CV 2490, 2006 WL 2945947 (N.D. Ohio Oct. 13, 2006) ("Moreover, in a § 1983 action the 'fruit of the poisonous tree doctrine' does not apply to exclude evidence in § 1983 cases and accordingly the lack of probable cause to stop and search does not vitiate probable cause to arrest."); *Cobb v. City of Columbus,* No. C–2–99–579, 2000 WL 1621091 (S.D.Ohio Oct. 20, 2000) ("Plaintiff argues that the object was fruit of the 'poisonous tree' and cannot be used to support a finding of probable cause for arrest. The Court finds this argument to be without merit."); *Padilla v. Miller,* 143 F.Supp.2d 479 (M.D.Pa.2001); *Clynch v. Chapman,* 285 F.Supp.2d 213, 225 (D.Conn.2003);

The Sixth Circuit Court of Appeals has not yet addressed whether the fruit of the poisonous tree doctrine is applicable in the civil context, but in *Townes v. City of New York,* the Second Circuit stated, "We find no case in which the doctrine has been successfully invoked to support a § 1983 claim, and we see no reason why it could be." 176 F.3d at 145. In justifying its reasoning, the Second Circuit noted that the fruit of the poisonous tree doctrine is an extension of

11

the exclusionary rule, which has generally been held "to apply only in criminal trials." *Id*. (quoting *Pennsylvania Bd. of Probation & Parole v. Scott,* 524 U.S. 357, 118 S.Ct. 2014, 2020 n. 4, 141 L.Ed.2d 344 (1998)). Further, the court found that, like the exclusionary rule, the fruit of the poisonous tree doctrine "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id*. (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). The Second Circuit indicated that the Supreme Court had previously refused to extend the exclusionary rule into non-criminal contexts including civil tax proceedings, habeas proceedings, grand jury, proceedings, INS deportation proceedings, and parole revocation proceedings. *Id*. at 145-146. In the Second Circuit's view, the fruit of the poisonous tree doctrine that extends from the exclusionary rule should be similarly limited.

Additionally, the Second Circuit reasoned that the purpose of the fruit of the poisonous tree doctrine, to deter future unlawful police conduct, would have already been served by suppression of the illegally seized evidence in the criminal trial. Finding the remedy applicable in the civil context would "vastly overdeter police officers" and would "result in a wealth transfer that is 'peculiar if not perverse.'" *Id*. at 148. The Second Circuit concluded by stating:

> Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.

*Id.*

Like several other district courts in this circuit, this Court finds the reasoning of the Second Circuit to be persuasive, and concludes that the fruit of the poisonous tree doctrine is inapplicable in the context of a Section 1983 claim. Therefore, even assuming Trooper

Hensley's search of Shakleford's home to be illegal, the fruit of that search, the Brolin shotgun, may be properly considered to determine whether the prosecution against Shakleford was initiated without probable cause sufficient for him to make out his Section 1983 claims for malicious prosecution.

Though the reasoning is somewhat convoluted,[2] Shakleford attempts to argue that his situation is different than the usual fruit of the poisonous tree context because "a reasonable officer would have known that the facts and circumstances of the illegal search of Mr. Shakleford's home and the illegal seizure of the Brolin shotgun were not sufficient to justify a reasonable belief *that the evidence was sustainable* that Mr. Shakleford committed any offense." [R. 5 at 5] (emphasis added). Shakleford's novel argument is unsupported by case law and misstates the probable cause standard in the context of a malicious prosecution. "Probable cause to prosecute exists when the facts and circumstances are sufficient to lead a reasonable person to believe that the accused committed the particular offense with which he is to be charged. *Mott v. Mayer*, 2013 WL 1663219 at *8 (6th Cir. Apr. 17, 2013) (citing *McKinley v. City of Mansfield,* 404 F.3d 418, 445 (6th Cir.2005)).

Trooper Hensley initially came to Shakleford's house to find stolen property, which

---

[2] Shakleford's argument appears to conflate the standards for immunity, probable cause to arrest, probable cause to search, and probable cause in the context of a grand jury's issuance of an indictment. The parties did dispute whether the grand jury's issuance of an indictment would have been alone sufficient to show probable cause here. As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Mott v. Mayer*, 11-3853, 2013 WL 1663219 (6th Cir. Apr. 17, 2013) (citing *Barnes,* 449 F.3d at 716). There is an exception to this rule "where the indictment was obtained wrongfully by defendant police officers who knowingly present[ed] false testimony to the grand jury." *Id.* (citing *Cook v. McPherson,* 273 F. App'x 421, 424 (6th Cir .2008); *Peet v. City of Detroit,* 502 F.3d 557, 566 (6th Cir.2007)). However, even under this standard, Shakleford's argument is not persuasive because even if it were unreasonable for Trooper Hensley to believe he had probable cause at the time he testified before the grand jury, this is not the same as presenting false testimony. Though the previously stated reasons are sufficient to show that Trooper Hensley had probable cause to initiate the prosecution, because he obtained an indictment from a properly constituted grand jury without the direct allegation of making a false statement, he would likely have an additional basis for probable cause on this ground as well.

Shakleford had in his possession. When Shakleford refused to let him in his home, he obtained a search warrant to do so, and he found the Brolin shotgun that had been previously reported as stolen. Whether or not Trooper Hensley had probable cause to obtain a warrant or conduct the search of Shakleford's home, these circumstances would have certainly constituted a sufficient factual basis to lead a reasonable person to believe that Shackleford engaged in the prosecuted offense of receipt of a stolen firearm. Therefore, because Trooper Hensley can show probable cause for the prosecution under the facts as alleged in the complaint, Shakleford's claim for malicious prosecution is properly dismissed.

### III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1)    Defendant Trooper Hensley's Motion to Dismiss [R. 4] is **GRANTED**;

(2)    Plaintiff Shakleford's claims against Trooper Hensley are **DISMISSED**;

(3)    All claims being resolved, the Court will enter an appropriate **JUDGMENT**; and

(4)    This matter is **STRICKEN** from the active docket of this Court;.


This 24th day of September, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

14